UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

MICHAEL EXENDINE,

        Plaintiff,

v.

THE CITY OF SAMMAMISH, et al.,

        Defendants.

CASE NO. C05-1026RAJ

ORDER

## I. INTRODUCTION

This matter comes before the court on Defendants' motion for summary judgment (Dkt. # 32). Neither party has requested oral argument, and the court finds the motion suitable for disposition on the basis of the parties' briefing and supporting evidence. For the reasons below, the court GRANTS IN PART and DENIES IN PART Defendants' motion.

## II. FACTS

This case arises from two interactions between Plaintiff Michael Exendine and King County Sheriff's Office deputies.

**A.   April 8, 2003 Incident**

Deputy Erik Soderstrom was driving a marked police car on routine patrol in Sammamish on April 8, 2003. As he drove on 239th Way Southeast, he realized he was on a dead-end street. Before Soderstrom could turn around, Exendine parked his truck in

ORDER – 1

the middle of the street.  Soderstrom claims that Exendine's truck blocked Soderstrom's car, but Exendine claims that Soderstrom could have driven around the truck.  *Compare* Soderstrom Decl. (Dkt. # 33) ¶ 4 *with* Exendine Decl. (Dkt. # 41) ¶ 16.  Soderstrom asked Exendine to move the truck so that he could pass, but Exendine replied that Soderstrom was trespassing on private property.[1]  Exendine refused to move the truck and instead entered his nearby home.  Soderstrom called for backup.

Exendine exited the house and again told Soderstrom he was trespassing. Soderstrom told Exendine he needed to move the truck or else he would be arrested. Soderstrom claims that Exendine ran away from him at this point, but Exendine denies ever running away from Soderstrom.  *Compare* Soderstrom Decl. ¶ 5 *with* Exendine Decl. ¶ 24.  Soderstrom caught up with Exendine and attempted to handcuff him.  Soderstrom claims that Exendine flailed on the ground, kicking and screaming; even after Exendine was handcuffed, Soderstrom states that he had to restrain him to prevent him from fleeing.  Soderstrom Decl. ¶¶ 6 and 7.  Exendine claims he did not strike, touch, kick, or threaten Soderstrom at any time.  Exendine Decl. ¶¶ 28-30.  Exendine's wife videotaped about 30 seconds of Soderstrom holding Exendine on the ground after he had been handcuffed.  *See* Hardung Decl. (Dkt. # 37), Ex. 4.

Other deputies arrived on the scene.  Deputy Mark Konoske photographed Exendine to document some abrasions he received during the struggle with Soderstrom. *See* Soderstrom Decl., Ex. 2.  Aid workers examined Exendine and determined that he did not need to go to the hospital.  Deputy Alana Hall read Exendine his *Miranda* rights, and took him to be booked into the Issaquah jail.  Exendine was charged with disorderly

---

[1] Exendine claims that there was a "no trespassing" sign on this street, but Soderstrom claims that there were no signs identifying this street as a private road.  *Compare* Exendine Decl. ¶ 12 *with* Soderstrom Decl. ¶ 2.  Soderstrom admitted in a deposition that he lacked probable cause to arrest Exendine for disorderly conduct if Exendine's conduct was committed on his own property.  Muenster Decl. (Dkt. # 40), Ex. F.

ORDER – 2

conduct, obstructing, and resisting arrest, but the charges were later dropped for lack of jurisdiction. *See* Hardung Decl., Ex. 6.

**B.     May 3, 2003 Incident**

Soderstrom and Deputy Christopher Sawtelle were monitoring traffic in their police cars in Sammamish on May 3, 2003. They claim they saw a truck driving with the passenger-side wheels on the shoulder of the street, which is a traffic infraction. *See* Soderstrom Decl. ¶ 13; Sawtelle Decl. (Dkt. # 34) ¶ 3. Soderstrom recognized the driver as Exendine. Exendine and his wife claim that all of the wheels of his truck remained in the roadway. *See* Exendine Decl. ¶ 43; Patricia Exendine Decl. (Dkt. # 42) ¶¶ 28 and 29.

The deputies followed Exendine, turning on their lights and sirens. Exendine did not pull over immediately. Soderstrom drove in front of Exendine in an attempt to stop him, but Sawtelle saw Exendine continue to try to pass Soderstrom. Exendine eventually stopped, and Soderstrom and Sawtelle exited their cars and ordered Exendine to exit his truck. Exendine recognized Soderstrom. Exendine drove away from the officers, and the officers pursued him in their cars. Exendine eventually stopped in front of a house, and a woman exited the car and entered the house. Exendine claims that he wanted to stop in front of this house because his friends lived there and he wanted them to observe Soderstrom's actions. Exendine Decl. ¶ 47.

Soderstrom and Sawtelle again exited their vehicles and told Exendine to exit his truck. The deputies drew their guns. They claim the guns were aimed at the truck, but Exendine claims the guns were aimed at him. *Compare* Soderstrom Decl. ¶ *with* Exendine Decl. ¶ 49. Exendine did not exit the truck. Sawtelle asked Soderstrom to distract the child in the middle seat so that he could break the passenger-side window. Sawtelle started striking the window, causing Exendine and the child to look at him. While they looked in that direction, Soderstrom shattered the driver-side window with his baton. Soderstrom states that he broke the window after about 30 seconds of yelling at

ORDER – 3

Exendine to exit the truck. *See* Soderstrom Decl. ¶ 18. The deputies then opened the door and pulled Exendine from the truck by his hair and arm, taking him to the ground and handcuffing him. The deputies claim that they did not strike Exendine while he was on the ground, but Exendine claims that one or both of the deputies struck him at least three times. *Compare* Soderstrom Decl. ¶ 21 and Sawtelle Decl. ¶ 12 *with* Exendine Decl. ¶ 53.

During the arrest process, Exendine complained of pain in his back, shoulders, neck, head, and ankles. An aid car arrived at the scene and transported Exendine to the hospital. Exendine's truck was impounded. Soderstrom later transported Exendine to the King County Jail, booking him for investigation of attempting to elude. The King County Prosecutor's Office declined to prosecute Exendine for attempting to elude, and Exendine was later charged with failure to obey an officer and reckless endangerment. The King County District Court later dismissed these charges with prejudice for lack of jurisdiction.

Exendine filed this lawsuit against Soderstrom, Sawtelle, the City of Sammamish[2], and King County, alleging claims for violation of 42 U.S.C. § 1983 and for the torts of assault, battery, and false imprisonment. Defendants have moved for summary judgment against all claims on the grounds discussed below.

## III.   ANALYSIS

**A.   Legal Standard on Summary Judgment.**

Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial

---

[2]Exendine admits that the claims against the City of Sammamish should be dismissed because the deputies were employed by the King County Sheriff's Office, not the City. *See* Pltf.'s Opp'n at 22, n.74.

ORDER – 4

burden of demonstrating the absence of an issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the moving party has met this initial burden, the burden shifts to the non-moving party to set forth specific facts showing a genuine issue exists for trial. Fed. R. Civ. P. 56(e); *Hernandez v. Spacelabs Med. Inc.*, 343 F.3d 1107, 1112 (9th Cir. 2003). Where the evidence, viewed in the light most favorable to the non-moving party, presents a genuine issue of material fact, then summary judgment must be denied. *Fontana v. Haskin*, 262 F.3d 871 (9th Cir. 2001).

**B.     Most of Plaintiff's Claims Survive Summary Judgment.**

Defendants assert that they are entitled to summary judgment on Exendine's claims against Soderstrom and Sawtelle under 42 U.S.C. § 1983 for false arrest and excessive force because Exendine's arrests were supported by probable cause and the force used was reasonable. Because Defendants contend that the arrests and the use of force were lawful, they also contend that the other related tort claims must be dismissed.

A plaintiff may bring a claim under Section 1983 to redress violations of his or her "rights, privileges, or immunities secured by the Constitution or [federal] laws" by a person or entity acting under the color of state law. 42 U.S.C. § 1983; *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). The Constitution protects a suspect from warrantless arrest unless there is probable cause for a law enforcement officer to believe that a criminal offense has been or is being committed. *Devenpeck v. Alford*, 453 U.S. 146, 152 (2004).

The Constitution also protects a suspect from the officer's use of excessive force in the course of an arrest. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To determine whether force is excessive, a court must balance the amount of force used against the governmental interests at stake. *Davis v. City of Las Vegas*, 478 F.3d 1048, 1054 (2007). A court's evaluation of governmental interests at issue in a particular case should include an assessment of the *Graham* factors, which include the severity of the crime, whether

ORDER – 5

the suspect poses a threat to the safety of the officers, and whether the suspect attempts to flee or actively resists arrest. *Id.* (citing *Graham*, 490 U.S. at 396).

### 1. There are Disputed Issues of Material Fact Regarding Probable Cause and Excessive Force.

As noted earlier in this order, Exendine and the deputies present versions of the facts that differ in many ways, some of them material and some not.  One material fact dispute is whether the deputies had reason to believe that Exendine committed a traffic infraction before he was pulled over on May 3.  Assuming he did not, as he contends, the deputies had no reason to initiate contact with Exendine.  Defendants argue that Exendine's assertions should not be believed because the court would be required "to believe that two experienced law enforcement officers initiated a traffic stop for no apparent reason and then lied about it under oath both in sworn deposition testimony and declarations signed under the penalty of perjury."  Defts.' Reply at 6.  This is true, but believing the deputies' assertions would require the court to believe that Exendine and his wife lied under oath.  This credibility determination must be made by the fact-finder at trial, not on a summary judgment motion.  *See Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005) (holding that summary judgment is inappropriate in cases that turn on credibility determinations).

The parties' versions of the facts also differ as to the April 8 arrest.  Soderstrom claims to have believed he had probable cause to arrest because Exendine refused to move his truck to allow Soderstrom to pass and because Exendine ran away when Soderstrom tried to order him to move his truck.  Soderstrom Decl. ¶¶ 5-6.  Exendine claims his truck did not block Soderstrom's car, such that Soderstrom could have driven away if he wanted to.  *See* Exendine Decl. ¶ 16.  Exendine also denies running away from Soderstrom.  Exendine Decl. ¶ 24.  These factual disputes are material to a determination as to whether Soderstrom had probable cause to arrest Exendine on April 8.

ORDER – 6

There are also material fact disputes as to whether the deputies used excessive force during both arrests. First of all, none of the crimes Exendine was charged with were severe or violent. As to the second *Graham* factor, the threat Exendine posed to the deputies, Exendine claims he never threatened the officers verbally or physically. *See* Exendine Decl. ¶¶ 30, 55, 56. The court also notes that Exendine's clothing on April 8 (boxer shorts and an unbuttoned shirt) would have made it difficult to conceal a weapon, and that the deputies did not express a concern in their declarations that they feared for their safety during either interaction.

The parties dispute whether, relevant to the third *Graham* factor, Exendine resisted arrest or attempted to flee. Exendine claims that as Soderstrom held him on the ground during the April 8 arrest, he placed his knee on Exendine's neck and back to hold him down, even though Exendine was not resisting arrest. *See* Exendine Decl. ¶¶ 20-30. Soderstrom claims that Exendine did resist arrest, and that the use of force was necessary to keep Exendine under control. *See* Soderstrom Decl. ¶¶ 6-7. As to the May 3 arrest, Exendine claims that the deputies struck him multiple times as they held him on the ground while handcuffing him, but the deputies deny striking Exendine at any point during the interaction. *Compare* Soderstrom Decl. ¶ 21 and Sawtelle Decl. ¶ 12 *with* Exendine Decl. ¶ 53. If Exendine's contentions are true, then the deputies used force against Exendine repeatedly after he was already on the ground and subdued. *See Fontana*, 262 F.3d at 880 (holding that if no force is necessary, any use of force is unreasonable). A fact-finder could conclude that the deputies' use of force was excessive under the circumstances, and the court accordingly concludes that the factual dispute about the amount of force used precludes summary judgment on the excessive force claim.

The material fact disputes related to probable cause and the reasonableness of the force used also preclude summary judgment against Exendine's assault and battery claim,

ORDER – 7

his false imprisonment claim, his claims based on the unreasonable seizure of his truck and resulting property damage, and his punitive damages claim. *See Boyles v. City of Kennewick*, 62 Wn. App. 174, 176 (1999) (probable cause and reasonable force are complete defenses to assault and battery claims); *McBride v. Walla Walla County*, 95 Wn. App. 33, 38, *rev. denied*, 138 Wn.2d 1015 (1999) (probable cause is a complete defense to a false imprisonment claim); *Tensley v. City of Spokane*, No. 06-35723, slip op. at 2 (9th Cir. Feb. 15, 2003) (if an officer has probable cause to arrest a suspect, the officer's seizure of the suspect's car (and trespass thereupon) is legally justified); *Smith v. Wade*, 461 U.S. 30, 56 (1982) (a jury may assess punitive damages in a Section 1983 action if the defendants acted with evil motive or intent, or callous or reckless indifference to plaintiff's constitutional rights).

Accordingly, the material fact disputes in this case preclude summary judgment against Exendine's Section 1983 claims against the deputies, his tort claims, and his punitive damages claim. Defendants' motion must be denied as to these claims.

**2.      The Deputies are Not Entitled to Qualified Immunity.**

Defendants also assert that they are entitled to summary judgment based on the deputies' qualified immunity. In considering whether a police officer is entitled to qualified immunity, a district court must consider whether, viewing the facts in the light most favorable to the party alleging injury, the facts alleged show that the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001). If so, then the district court must next determine whether the constitutional right was clearly established. *Id*. at 202. If the constitutional right was clearly established such that a reasonable officer would have known that his or her conduct violated the law, then qualified immunity does not apply. *Id*.

Viewing the facts of the two arrests in the light most favorable to Exendine, his constitutional rights to be free from unlawful arrest and the use of excessive force were

ORDER – 8

violated. As described above, Exendine's facts establish that the deputies lacked probable cause to arrest and used excessive force under the circumstances. *See supra* Part III.B.1. Therefore, the first step of the qualified immunity inquiry is satisfied.

The court now turns to the second step, to determine if the contours of Exendine's constitutional rights were clearly established. This inquiry is easily resolved as to whether the arrests were lawful because they were based on probable cause. An officer has probable cause to arrest if there is reason to believe that a crime has been or is being committed. *Devenpeck v. Alford*, 543 U.S. 146, 152 (2004). If Soderstrom had no reason to believe his car was blocked or that Exendine was eluding him, then Soderstrom lacked probable cause to arrest on April 8. Likewise, if the deputies had no reason to believe Exendine committed a traffic infraction on May 3, then there was no basis to stop Exendine at all. The law regarding probable cause is so clearly established that if there was no basis for the deputies to believe that Exendine had committed or was committing a crime, any reasonable officer would have known that the arrests were unlawful. *See Brinegar v. U.S.*, 338 U.S. 160, 176 (1978) (describing the definition of probable cause as a "long-prevailing standard").

As to the excessive-force claim, the court finds that the law in this area is also clearly established. As described above, a court evaluating an excessive-force claim must balance the type and amount of force used against the governmental interests at stake, assessing the severity of the crime, whether the suspect poses a threat to the safety of the officers, or whether the suspect attempts to flee or actively resists arrest. *See supra*, Part III.B (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989), and *Davis*, 478 F.3d at 1054).

The court finds that the application of this constitutional inquiry to the circumstances in this case was clearly established. Applying the long-standing *Graham* factors to this case, and viewing the evidence in Exendine's favor, the deputies used excessive force in these circumstances. First, as to the severity of the crimes at issue,

ORDER – 9

none of the crimes in this case were serious or violent. *See Davis*, 478 F.3d at 1055 (concluding that trespassing and obstructing were not serious offenses that would warrant a use of severe force). Second, as to whether Exendine posed a safety risk, he claims he did not physically or verbally threaten the safety of the officers. He was unarmed, and the court notes that on April 8 his clothing (boxer shorts and an unbuttoned shirt) would have made concealing a weapon difficult. Third, with regard to whether Exendine attempted to flee or resist arrest, he admits that he initially refused to stop his truck on May 3 and then, after he eventually did stop, he refused to comply with the officers' orders to exit his truck. But he also claims that by the time he was handcuffed and on the ground, he had no opportunity to flee and did not resist, yet the officers repeatedly struck him anyway. Viewing the evidence in Exendine's favor, the law so clearly prohibits the use of that type and amount of force against a compliant, non-fleeing suspect in a relatively minor non-violent crime that no reasonable officer could have believed that the force used against Exendine was lawful. Therefore, the deputies are not entitled to qualified immunity.

**D.    Exendine's Section 1983 Claim Against King County Fails as a Matter of Law.**

Exendine claims that King County is liable under 42 U.S.C. § 1983 because the County's use of force policy authorized the excessive force used by the deputies. Specifically, Exendine claims that the County policy violates the Fourth Amendment because it does not require deputies to warn a suspect before using non-deadly force, does not require that criminal charges be supported by probable cause, and permits deputies to unreasonably shatter windows.

A municipality cannot be held liable under Section 1983 solely under a *respondeat superior* theory. *Monell v. New York Dep't of Social Servs.*, 436 U.S. 658, 691 (1978). A plaintiff seeking to impose Section 1983 liability on a municipality must attribute a constitutional violation to an official municipal policy or widespread custom, or to the act

ORDER – 10

of a final municipal policymaker. *Collins v. City of Harker Heights*, 503 U.S. 115, 123 (1992). For purposes of Section 1983 liability for the violation of a constitutional right pursuant to policy, a plaintiff must show (1) that his or her constitutional rights were violated, (2) that the municipality had a policy, (3) that the municipal policy amounted to a deliberate indifference to plaintiff's constitutional rights, and (4) that the policy was the moving force behind the constitutional violation. *Plumeau v. School District No. 40*, 130 F.3d 432, 438 (9th Cir. 1997).

The court concludes that none of Exendine's claimed bases for municipal liability withstands summary judgment. As to the first basis, Exendine has failed to show that he has a constitutional right to be warned before non-deadly force is used, such that the County's policy silence on warnings was indifferent to his constitutional rights. Exendine claims that *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001), requires police to give a warning before using non-deadly force. The *Deorle* court, however, expressly declined to impose such a requirement:

> Our cases demonstrate that officers provide warnings, where feasible, even when the force used is less than deadly. We do not hold, however, that warnings are required whenever less than deadly force is employed. Rather, we simply determine that such warnings should be given, when feasible, if the use of force may result in serious injury, and that the giving of a warning or the failure to do so is a factor to be considered in applying the [*Graham v. Connor*, 490 U.S. 386 (1989),] balancing test.

*Deorle*, 272 F.3d at 1284 (citations omitted). Exendine has cited no other authority to support a warning requirement and the court is unaware of any such authority. Therefore, Exendine's first basis for municipal liability fails.

Exendine's second basis for municipal liability also fails. The County's force policy states that "whenever force is used, criminal charges should be filed against the suspect, when appropriate." Fenton Decl., Ex. 1. According to Exendine, the County's policy violates the Fourth Amendment because it does not require that criminal charges be supported by probable cause, but instead suggests "that the policy is a directive to

ORDER – 11

deputies to slap charges on anyone they beat up." Pltf.'s Opp'n at 22.  Exendine's interpretation of this sentence is inconsistent with the plain language of the sentence at issue and the rest of the policy statement paragraph, however.  The policy statement reads:

> Deputies shall not use either physical or deadly force on any person except that which is reasonably necessary to effect an arrest, to defend themselves or others from violence, or to otherwise accomplish police duties according to law.  To the extent that Sheriff's Office Policy may contain provisions more restrictive than the state law, such provisions are not intended, not may they be construed or applied, to create a higher standard of care or duty toward any person or to provide a basis for criminal or civil liability against the County, the Sheriff's Office, or any of it's [sic] officials or individual deputies.  Secondly, whenever force is used, criminal charges should be filed against the suspect, when appropriate.

Fenton Decl., Ex. 1.  This policy statement does not suggest that charges will be filed without probable cause, but expressly suggests that charges should be filed *when appropriate*.  Furthermore, the deputies stated in their declarations that they believed they had probable cause to arrest Exendine.  *See* Soderstrom Decl. ¶¶ 6, 21; Sawtelle Decl. ¶ 12.  Even if the deputies lacked probable cause, as Exendine contends, he has not presented any evidence that the *County's policy* motivated the deputies to arrest and charge him without probable cause.  Because Exendine has not shown that the County's policy was indifferent to his constitutional rights or that the policy motivated the deputies to violate his rights, this basis for liability fails.

Exendine's final argument for municipal liability is based on the County's window-shattering procedure.  Soderstrom testified in a deposition that he broke Exendine's car window in accordance with County procedure.  Meunster Decl. (Dkt. # 40), Ex. F.  Exendine claims that the County procedure violated his constitutional rights because it was unreasonable for Soderstrom to break his window in this situation.  Other than Soderstrom's assertion that Exendine's window was broken in accordance with

ORDER – 12

County procedure, Exendine has presented no evidence of the *content* of the County's policy or procedure related to breaking windows.

Without knowing the content of the policy, and given only a single incident of window breaking, the court has no basis from which to evaluate whether the County's policy is indifferent to Exendine's constitutional rights.  Because Exendine has failed to present evidence of the County's window-breaking policy, his claim for Section 1983 liability based on that policy must be rejected.

Thus, because all of Exendine's grounds for municipal liability under Section 1983 fail, his claim against King County must be dismissed.

## IV.  CONCLUSION

For these reasons, the court GRANTS IN PART and DENIES IN PART Defendants' motion (Dkt. # 32).  The motion is DENIED except as to the following:

(1) The Defendants' motion as to the Section 1983 claim against King County is GRANTED.  This claim is DISMISSED.

(2) All claims against Defendant City of Sammamish are DISMISSED in their entirety.

Dated this 17th day of June, 2008.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER – 13